*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BRAYSHAW, Minors.

UNPUBLISHED
April 21, 2022

No. 357930
Shiawassee Circuit Court
Family Division
LC No. 19-014414-NA

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating his parental rights to his minor children AB and JB under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j).[1] For the reasons stated in this opinion, we vacate the court's termination order and remand for further proceedings.

## I. BASIC FACTS

In February 2019, respondent broke into a home and stole several items. He attempted to justify the theft by explaining that after he had performed work for the homeowner, he had not been paid. As a result, he planned to sell the stolen items for money. At the time of the break-in, respondent's son, NB[2] was in the vehicle. Although the exact circumstances are unclear, the record reflects that both respondent and NB pleaded guilty to criminal charges arising from the breaking and entering. Respondent was incarcerated.

In June 2019, petitioner, the Department of Health and Human Services, filed a petition seeking the removal of NB, AB, and JB from their mother's care. The petition alleged that the children's mother had a substance-abuse problem and that a "neglectful home environment" had led to the family being evicted from their home. With regard to respondent, the petition alleged

---

[1] The trial court also terminated the parental rights of the children's mother. She is not a party to this appeal.

[2] NB was a minor child at the time the initial petition was filed, and the court took jurisdiction over him following his parents' no-contest plea to the allegations in the petition. However, after NB attained the maximum jurisdictional age, the trial court terminated its jurisdiction over NB.

he was incarcerated for breaking and entering a home, that he had involved NB in the crime, and that, because of his incarceration, he could not provide the children with proper care and custody. In October 2019, respondent and the children's mother pleaded no contest to the allegations in the petition and the trial court took jurisdiction over the children. The record is replete with references that, because of his incarceration, services available to respondent were limited. Moreover, between October 2019 and February 2020, petitioner only contacted respondent by mailing him prepaid envelopes and copies of the parent-agency agreement. No services were offered to him by petitioner. Additionally, although respondent sought services available through the Michigan Department of Corrections (MDOC), their availability was limited.

In February 2020, respondent and the children's mother withdrew their no-contest pleas because they had not been properly advised of the consequences of their pleas. Thereafter, respondent and the children's mother again pleaded no-contest to the allegations in the petition. Respondent then stated that he would "like not to be bothered with the situation anymore" because it was "just making it harder on me." He did not want to attend "more of the court dates" because he was "done dealin' with the situation." Respondent left the hearing, and, in light of his departure and his statements, petitioner requested that respondent be made a nonparticipating parent. The trial court granted petitioner's request. In doing so, the court stated that respondent could return as a participating parent at any time, but that he would have to initiate the return. Respondent remained a nonparticipating parent for approximately one year. During that time, respondent sent letters to AB and JB with NB's assistance and without the knowledge or approval of petitioner.

In November 2020, the goal for the children was changed from reunification to adoption. In February 2021, respondent's lawyer informed the court that respondent wanted to participate in the case again. At a hearing on March 15, 2021, respondent's lawyer explained that respondent would be released from prison in five months. As a result, MDOC could offer him additional services. Respondent stated that he had already completed two classes while incarcerated and was attempting to enroll in others, including a Better Dads class. The trial court, however, stated that the goal would continue to be adoption. Subsequently, petitioner filed a supplemental petition seeking to terminate the parental rights of respondent and the children's mother. Following a termination hearing, the court found clear and convincing evidence of statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j), and it found by a preponderance of the evidence that termination was in the children's best interests.

## II. REUNIFICATION EFFORTS

Respondent first argues that reversal is warranted because petitioner failed to make reasonable efforts to reunify him with the children. He also contends that petitioner failed to provide him with a reasonable opportunity to complete services, failed to communicate with him, and failed to ensure that the services in his parent-agency agreement were available to him. We conclude that respondent has waived this issue.

Respondents must "object or indicate that the services provided to them were somehow inadequate" to preserve a claim that petitioner failed to provide reasonable efforts toward reunification. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Here, the case services plan was adopted at the preliminary hearing. Because there was a problem with the recording of that hearing, a transcript is not available. Nevertheless, the record reflects that respondent signed

the initial case services plan and mailed it back to petitioner. He then attended several court hearings and, although petitioner mailed him updated copies of the case services plan, he never signed or returned them.

Subsequently, in February 2020, respondent stated that he no longer wanted to be involved in the case. Thus, the record reflects that instead of objecting to the adequacy of the services provided, respondent refused to participate in the reunification process. "Respondent may not assign as error on appeal something that [he] deemed proper in the lower court because allowing [him] to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). The intentional relinquishment of a known right constitutes waiver. *The Cadle Co v Kentwood*, 285 Mich App 240, 254-255; 776 NW2d 145 (2009). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Id.* at 255. Respondent's express statements indicating that he no longer wanted to be involved in the case constitute a waiver of his claim that petitioner failed to make reasonable efforts to reunify him with the children.

## III. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent next argues that the trial court clearly erred by finding statutory grounds to terminate his parental rights. This Court reviews for clear error the trial court's factual findings and its determination that statutory grounds for termination of parental rights exist. *In re Mason*, 486 Mich 142, 152; 786 NW2d 747 (2010). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) and (j). Termination is warranted under MCL 712A.19b(3)(g) if the court finds by clear and convincing evidence that:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

MCL 712A.19b(3)(g) was amended effective June 12, 2018. See 2018 PA 58. The amended version of the statute was in effect at the time these termination proceedings were initiated, but the trial court did not use it and instead applied the former version of MCL 712A.19b(3)(g).[3] Because of the trial court's erroneous use of the former version of the statute,

---

[3] It is concerning that, almost three years after the statutory language was amended, the trial court relied upon the prior version of the statute when terminating respondent's parental rights. The trial

there are no findings on the record related to whether respondent was financially able to provide his children with proper care and custody. Nevertheless, respondent testified at the termination hearing that he expected to be released from prison and that, upon his release, he had secured employment that he believed would be sufficient to financially support himself and the children. Therefore, despite the court's inexplicable failure to apply the current version of the statute, the record would have supported a finding that respondent was financially able to provide the children with proper care and custody.

However, we conclude that the trial court clearly erred by finding that respondent would be unable to provide the children with proper care and custody within a reasonable time considering the children's ages. AB was 13 years old and JB was 6 years old. Although they had been in care for approximately two years, petitioner did not present any specific evidence supporting a finding that it would take respondent a significant period of time after his release from incarceration to provide the children with proper care and custody. Instead, a caseworker opined that it would take 12 months, but she did not proffer any basis for that opinion.

In contrast, as indicated above, respondent testified that he had secured employment for when he was released from incarceration. He stated that the job was the same one that he had before his incarceration and that he would be making between $1,100 and $2,000 per week. He also had arranged for housing. Notwithstanding that respondent was expected to be released from incarceration and had both employment and housing arranged for upon his release, the trial court found that respondent could not provide the children with proper care and custody because if the children were placed with him, they would be exposed to respondent's "sense of morality." The court found respondent's sense of mortality was deficient after examination of respondent's criminal history. Termination is not warranted under MCL 712A.19b(3)(g) solely because a respondent has a criminal history. A parent does not fail to provide proper care and custody merely by virtue of having a criminal history, even if that history is reflective of poor moral character. On this record, the trial court clearly erred by finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(g).

The court also clearly erred by finding grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j). Termination is warranted under MCL 712A.19b(3)(j) if the court finds by clear and convincing evidence that:

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Harm under MCL 712A.19b(3)(j) includes emotional and physical harm. *In re Hudson*, 294 Mich App at 268. The trial court's finding that termination was proper was instead based on its belief that, if returned to respondent's care, the children might receive respondent's "sense of morality." Stated differently, the court concluded that respondent lacked moral fitness based on his criminal history, and then speculated that if the children were returned to respondent's care, they might

court should take care in future proceedings to ensure that it is using the current version of the statute before making findings related to the termination of a parent's parental rights.

-4-

receive that same lack of moral fitness. Presumably, they would then be harmed because, like respondent, they would commit crimes. The statute, however, requires the court to find by clear and convincing evidence that there is a *reasonable likelihood* that the children will be harmed if returned to respondent's home.

Moreover, "just as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination." *Mason*, 486 Mich at 165. "Rather, termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances, including when the parent created an unreasonable risk of serious abuse or death of a child, if the parent was convicted of felony assault resulting in the injury of one of his own children, or if the parent committed murder, attempted murder, or voluntary manslaughter of one of his own children." *Id*. In *Mason*, our Supreme Court concluded that termination under subdivision (j) was not warranted because the respondent's criminal history "consisted largely of short jail stints for comparatively minor offenses," and the record showed that the respondent "supported his family before his imprisonment and no evaluation was ever conducted to gauge whether he was likely to offend again." *Id*. Likewise, in this case, respondent's criminal history consisted of comparatively minor theft offenses, he supported his family prior to his incarceration, and no evaluation was conducted to determine the likelihood that he was reoffend. Moreover, there is nothing to suggest that the children would be harmed physically or emotionally if returned to respondent's care. While respondent has demonstrated through his behavior in committing criminal acts that he is not a model citizen, that fact alone is not enough to strip him of his parental rights. In light of this record, we conclude that the trial court clearly erred by finding termination was warranted under MCL 712A.19b(3)(j).[4]

Because the trial court clearly erred by finding grounds for termination under MCL 712A.19b(3)(g) and (j), we vacate the termination order and remand for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[4] Given our resolution, we do not address respondent's argument that the trial court erred by finding that termination of respondent's parental rights was in the children's best interests.